IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KIMBERLY A. WALSH,               )
                                 )
            Plaintiff,           )
                                 )
      v.                         )        No. 07 C 1478
                                 )
LONG TERM DISABILITY COVERAGE    )
FOR ALL EMPLOYEES LOCATED IN     )
UNITED STATES OF DeVRY, INC;     )
and PRUDENTIAL INSURANCE         )
COMPANY OF AMERICA,              )
                                 )
            Defendants.          )


MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

In this lawsuit, plaintiff Kimberly A. Walsh ("Walsh") alleges that her long-term

disability benefits were wrongfully terminated by Defendants[1] and that, pursuant to the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), she

is entitled to recover benefits owed her under the terms of the Plan. Currently pending before the

court are the parties' cross motions for summary judgment. For the reasons set forth below,

Walsh's Motion for Summary Judgment (Dkt. No. 89-4) is denied in its entirety and Defendants'

Motion for Summary Judgment (Dkt. No. 82) is granted in its entirety.

---

[1] Named defendants in this case include Walsh's employee benefits plan—Long Term
Disability Coverage for All Employees Located in the United States of DeVry, Inc. ("the
Plan")—and the underwriter of the Plan, Prudential Insurance Company of America
("Prudential") (collectively "Defendants").

<u>BACKGROUND</u>

In January 2000, Walsh began working for DeVry, Inc. in the position of admissions representative. (Pl.'s 56.1(a)(3) Stmt. ¶ 4.) As an employee of DeVry, Inc., Walsh is a Plan participant who is entitled to long-term disability ("LTD") benefits in accordance with the terms of the Plan.[2] (*Id.* ¶ 1.)

In July 2000, Walsh developed sudden excruciating pain in her lower back with radiation to the lower limbs. (*Id.* ¶ 7.) Walsh had surgery for a ruptured disc in November 2000. (*Id.* ¶ 8.) After experiencing increasing lower back pain and pain down her right leg during the first six months of 2002, Walsh was diagnosed with a recurrent L4-L5 disc herniation on the right side, for which she underwent a second surgery on July 22, 2002. (*Id.* ¶¶ 9, 11-12.) Following the second surgery, Walsh continued to experience pain in her lower back and also experienced pain down her left leg. (*Id.* ¶ 15.) Walsh's ongoing pain was treated from August 2002 to December 2002 through a combination of cortisone injections, prescription pain medications,

---

[2] In briefing their summary judgment motions, neither party has explicitly stated which documents together constitute the "Plan." It appears from the record that Walsh's LTD coverage is generally governed by Prudential Group Contract No. G-41206. (*See* Def.'s 56.1(a)(3) Stmt. ¶ 7 (citing Admin. Record at PRU00739-749) ("the Group Contract").) In contrast, the document referred to by the parties as "the Plan" appears to be a specific Group Insurance Certificate providing long term disability benefits for employees located in the United States pursuant to the terms of the Group Contract. (*See* Admin. Record at PRU000748.) This document is found at pages PRU000750-787 of the Administrative Record. According the Group Contract, "[a]ll of the provisions of the Group Insurance Certificate(s), attached to and made part of the Group Contract, apply to the Group Contract as if fully set forth in the Group Contract." (Admin. Record at PRU000740.) Although the parties also seem to include pages PRU000788-794 within their concept of "the Plan," (*see* Def.'s 56.1(a)(3) Stmt. ¶ 7; Pl.'s 56.1(b)(3) Resp. ¶ 7), the court notes that the heading for this document explicitly states "[t]he Summary Plan Description is not part of the Group Insurance Certificate." (Admin. Record at PRU000788.) Therefore, in referring to "the Plan," the court references pages PRU000750-787 of the Administrative Record only.

fentanyl patches, and a transforaminal epidural steroid injection.  (*Id.* ¶¶ 15, 19-21.)  During this

time period, Walsh was treated by her orthopedic surgeon, Dr. Mark K. Chang, and was also

receiving treatment at two different pain management clinics.  (*Id.* ¶¶ 15, 17.)

Walsh submitted a claim for LTD benefits to Prudential on January 13, 2003.  (Def.'s

56.1(b)(3)(B) Resp. ¶ 54.)  Under the terms of the Plan, a Plan participant is considered

"disabled" for purposes of receiving LTD benefits if:

. . . Prudential determines that:

- You are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and

- You have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury**.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

(Def.'s 56.1(a)(3) Stmt. ¶ 8) (emphasis in original).

On February 20, 2003, Prudential Disability Claim Manager Alicia M. Diaz ("Diaz")

reviewed Walsh's claim with Dr. Patrick Foye, a physical medicine and rehabilitation physician

associated with the University of Medicine & Dentistry of New Jersey.  (Pl.'s 56.1(a)(3) Stmt. ¶

61.)  Diaz's computerized notes from February 20, 2003 state that "the medical information does

not preclude clmt. from performing M&S [material and substantial] duties of reg occ [regular

occupation] as an admissions rep."  (*Id.* ¶ 63.)  The next day, Diaz reviewed Walsh's claim with

Dr. Albert Kowalski, an occupational medicine physician and a Prudential Vice President and

Medical Director.  (*Id.* ¶ 64.)  Diaz's notes from February 21, 2003 state that "As per review,

DCM to approve claim thru 5/03 and flu [follow up] with EE [Walsh] for end of epidurals, flu

MRI, neurological deficients and physical therapy summary and examination reports." (*Id.*) Diaz then sent a letter to Walsh dated February 21, 2003, informing Walsh that her LTD claim had been approved with a monthly benefit of $3,381.80 effective January 18, 2003. (*Id.* ¶ 65.)

Walsh continued to undergo diagnostic testing for her back pain in early 2003. (*Id.* ¶ 22.) At a March 1, 2003 consultation with neurosurgeon Dr. Russ P. Nockels, Walsh reported that she had experienced worsened back, right and left leg pain after the July 2002 surgery. (*Id.* ¶ 23.) Walsh underwent a third lower back surgery on June 16, 2003. (*Id.* ¶ 26.) At the time Walsh was discharged following her third surgery, Dr. Nockels restricted Walsh's activity to prohibit bending, twisting, lifting more than five pounds of weight, or sitting at ninety degrees for greater than thirty minutes three times per day. (*Id.* ¶ 27.) Dr. Nockels also required Walsh to lift only from a squatting position and to avoid extreme bending activities. (*Id.*) In July 2003, Walsh received continued treatment for pain management from Dr. Vikram Patel and Dr. Satheesh Muppavarapu. (*Id.* ¶¶ 29-30.) From August 4, 2003 to October 2, 2003, Walsh was treated at the Marionjoy Rehabilitation Hospital pain management program by Dr. James Gruft. (*Id.* ¶¶ 33, 35.) Walsh had a lumbar spine MRI performed on November 8, 2003 by Dr. Gunnar Anderson, and she returned to Dr. Gruft for treatment on November 25, 2003. (*Id.* ¶¶ 36-37; Def.'s 56.1(a)(3) Stmt. ¶ 24.) Walsh underwent further testing with Dr. Gruft in December 2003. (Pl.'s 56.1(a)(3) Stmt. ¶ 40.) From January 2004 through December 2004 Walsh received outpatient physical therapy at Marionjoy, as prescribed by Dr. Gruft. (*Id.* ¶¶ 41, 50.) On Dr. Gruft's referral, Walsh also consulted with two different specialists in the area of implantable pain control devices in March and June 2004—Dr. Ira Goodman and Dr. Eugene Lipov. (*Id.* ¶¶ 42, 45.) Walsh continued to see Dr. Gruft throughout 2004, and Dr. Gruft has served as Walsh's

treating physician from that time to the present day.  (*Id.* ¶¶ 47, 51, 76.)  On March 5, 2004, Walsh participated in an Independent Medical Examination performed by Dr. David Rosania. (Def.'s 56.1(a)(3) Stmt. ¶¶ 19-22.)

On July 13, 2004, Prudential Disability Consultant Aneesha Fain ("Fain") sent a letter to Walsh explaining that her initial period of LTD benefits (24 months) was scheduled to end on January 17, 2005, and that Prudential would be conducting an evaluation to determine Walsh's eligibility for continuing LTD benefits beyond that date.  (*Id.* ¶ 13.)

As part of Prudential's evaluation of Walsh's eligibility for ongoing LTD benefits, Fain referred Walsh's file to Dr. Foye on January 5, 2005 for his opinion on whether Walsh was disabled from performing sedentary work.  (Pl.'s 56.1(a)(3) Stmt. ¶ 68.)  On February 20, 2005, Dr. Foye faxed his written report to Fain containing his conclusion that Walsh "is indeed capable of performing work at a sedentary-light duty level, on a full time basis (eight hours per day), with relatively minimal accommodations noted above (ergonomic chair, and perhaps and sit-stand workstation).  Further it should be specified that she should not be required to lift items from the floor level, nor perform any repetitive lifting/carrying of more than 10-20 pounds, and nor should she operate any heavy machinery while taking narcotic analgesics."  (*Id.* ¶ 70.)

Before receiving Dr. Foye's report, Fain had sent a follow-up letter to Walsh on February 16, 2005, stating:

> We have completed our evaluation of your claim based on the definition of disability as stated above.  We have determined that you meet the requirements for eligibility and benefits under this definition of disability.  Your LTD benefits have been authorized through February 25, 2008 while we continue our evaluation.  Benefits will continue provided that you remain totally disabled under the terms of the DeVry, Inc., Group Ltd Policy.

(Def.'s 56.1(b)(3)(B) Resp. ¶ 69; *see also* Admin. Record at PRU000678.)

On February 24, 2005, after receiving Dr. Foye's report, Fain sent Walsh a letter informing Walsh that her LTD benefits would be terminated effective March 1, 2005. (Pl.'s 56.1(a)(3) Stmt. ¶ 73.)

Walsh appealed Prudential's March 1, 2005 termination of her LTD benefits on August 22, 2005. On September 26, 2005, Prudential Vocational Rehabilitation analyst Gregg Schwartzkopf documented a transferable skills analysis that identified several occupations Walsh could perform with her restrictions, and Walsh's appeal was denied by Prudential on September 29, 2005. (Def.'s 56.1(a)(3) Stmt. ¶ 55; Pl.'s 56.1(a)(3) Stmt. ¶ 74.) On December 10, 2005, Walsh was notified by the Social Security Administration that she was entitled to past due Social Security Disability Benefits dating back to January 2003, as well as future benefits in the amount of $1,267.00 per month. (Def.'s 56.1(a)(3) Stmt. ¶ 57.) Walsh again appealed the termination of her LTD benefits with Prudential on March 24, 2006. In April 2006, Dr. R. David Bauer performed a review of Walsh's claim file, and Walsh's second appeal was denied by Prudential on April 26, 2006. (Def.'s 56.1(a)(3) Stmt. ¶¶ 50-52; Pl.'s 56.1(a)(3) Stmt. ¶ 74.) Walsh filed this lawsuit on March 15, 2007. An Independent Medical Examination of Walsh was performed by Dr. Victoria Brander on July 18, 2008. (Def.'s 56.1(a)(3) Stmt. ¶¶ 63-65.)

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this assessment, it is not for the court to make credibility determinations or to weigh conflicting evidence. *Abdullahi v. City of Madison*, 423 F.3d 763,

773 (7th Cir. 2005). Ultimately, "the district court need[ ] only to decide whether, based on the evidence in the record, a material dispute of fact exist[s] that require[s] trial." *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 914 (7th Cir. 2007). When ruling on cross-motions for summary judgment, the court "view[s] all facts and draw[s] all reasonable inferences in a light most favorable to the party against whom the motion is made." *Tate v. Long Term Disability Plan for Salaried Employees of Champion Int'l Corp. #506*, 545 F.3d 555, 559 (7th Cir. 2009).

Matters of contract interpretation, such as claims for ERISA benefits pursuant to specific plan documents, are "particularly suited to disposition by summary judgment [because] . . . [t]he interpretation of an unambiguous contract is a question of law for the court." *Bechtold v. Physicians Health Plan of N. Ind., Inc.*, 19 F.3d 322, 325 (7th Cir. 1994) (citations omitted). "A term is [only] ambiguous if it is subject to reasonable alternative interpretations." *Id.* (quoting *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir. 1993)). In this case, neither party has directed the court to any Plan language that it considers to be ambiguous.        Walsh brings her claim against Defendants pursuant to ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B). Section 1132 empowers a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). There is a general presumption that courts reviewing ERISA claims will apply a *de novo* standard of review, *Patton v. MFS/Sun Life Fin. Distrib., Inc.*, 480 F.3d 478, 485-86 (7th Cir.

2007), and the parties to this case do not argue otherwise.[3]

In applying a *de novo* standard of review, this court "can and must come to an independent decision on both the legal and factual issues that form the basis of the claim." *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) ("*Diaz II*"). This means the court must determine—based on all evidence in the record—whether Walsh qualifies for long-term disability benefits under the terms of the Plan. *Id.* "What happened before the Plan administrator or ERISA fiduciary is irrelevant." *Id.* (citing *Patton*, 480 F.3d at 485-86). However, this does not mean that the court must ignore Walsh's arguments that the evidentiary record before the court has been tainted or is otherwise unreliable, as these arguments are relevant to the court's "informed and independent judgment" of Walsh's claim. *Patton*, 480 F.3d

---

[3] Both parties assume without further discussion that the *de novo* standard of review applies to their motions for summary judgment. (Compl. ¶ 39; Def.'s Mem. at 6; Pl.'s Mem. at 1.) In the court's February 6, 2008 ruling on "Defendants' Motion for Protective Order and to Limit Discovery to the Administrative Record," the court found that Defendants had waived "any objection to the expansion of the record based on the applicable standard of review." (Dkt. No. 43 at 3.) However, the court did not make a final determination at that time regarding the appropriate standard of review in this case. Upon the court's own review of the record, the court notes that Defendants attempted in the Summary Plan Description to expressly reserve a high level of discretion in determining eligibility for Plan benefits. (Admin. Record at PRU000790.) Where an ERISA plan includes language giving the plan administrator clear discretion to determine eligibility for benefits, district courts will apply a more deferential standard of review. *Patton*, 480 F.3d at 486. Because there is no indication that the parties in this case believe the Summary Plan Description constitutes part of the Plan for ERISA purposes, and the plain language of the Summary Plan Description indicates that it does not, the court finds that Defendants have failed to express any clear limitation on the scope of judicial review of Defendants' claims determinations. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 333 (7th Cir. 2000) ("if the employer is going to reserve a broad, unchanneled discretion to deny claims, the employees should be told about this, and told clearly"); *see also Woods v. Prudential Ins. Co. of Am.*, 528 F.3d 320, 322 n.3 (4th Cir. 2008) (analyzing Summary Plan Description containing same language as in this case). Ultimately, it is Defendants' burden "to establish that the language of the plan gives [them] discretionary authority to award benefits." *Sperandeo v. Lorillard Tobacco Co.*, 460 F.3d 866, 870 (7th Cir. 2006).

at 485-86 (quoting *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir. 1994)). The scope of the court's inquiry in this case includes whether Walsh was entitled to LTD benefits at the time her LTD benefits were terminated by Defendants on May 1, 2005, as well as whether she continues to be entitled to LTD benefits up to the present day. *See* Compl. ¶ 39(a), (d). Ultimately, Walsh bears the burden of proving that she is entitled to LTD benefits under the terms of the Plan. *Ruttenberg v. U.S. Life Ins. Co. in City of New York*, 413 F.3d 652, 663 (7th Cir. 2005). It is Defendants' burden to prove that any relevant exclusions in the Plan apply to Walsh's benefits claim. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## ANALYSIS

The parties present very different views of the case in their respective motions for summary judgment now pending before the court. Citing the Complaint and their own Answer and Affirmative Defenses, Defendants argue that Walsh is seeking "long-term disability ('LTD') benefits under an employee welfare benefit plan sponsored and maintained by her employer," and Defendants deny liability on the grounds that Walsh "does not meet the definition of disability as defined in the employee welfare benefit Plan at issue." (Def.'s 56.1(a)(3) Stmt. ¶ 1.)

Walsh, on the other hand, asserts that her lawsuit "actually seeks relief *from defendants' wrongful termination* of plaintiff's LTD benefits previously paid for over 25 months." (Pl.'s 56.1(b)(3)(B) Resp. ¶ 1) (emphasis added). Drawing on this distinction, Walsh generally does not argue in her summary judgment motion that she is entitled to LTD benefits under the terms of the Plan; rather, she argues that she is entitled to benefits because of "the wrongful termination of plaintiff's long term disability benefits by defendants . . . and the wrongful denial

of plaintiff's administrative appeals by defendants."  (Pl.'s Mot. ¶ 1.)

Because the briefing on each motion for summary judgment necessarily focuses on different questions of law and fact, the court in this opinion addresses each motion separately in the analysis that follows.

1.    Plaintiff's Motion for Summary Judgment

Walsh brings her lawsuit under 29 U.S.C. § 1132(a)(1)(B).  Section 1132 empowers a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Despite the statute's focus on "the terms of the plan," Walsh generally does not address the question of whether she is entitled to LTD benefits under the terms of the Plan in her motion for summary judgment.  Without any citation to the record or further argument on this point in her opening memorandum, Walsh simply states that "[u]ndisputed record evidence demonstrates that plaintiff provided an abundance of acceptable and objective medical proof to defendants that she met and continues to meet the definition of 'Disability' found in the Plan documents through the present day."  (Pl.'s Mem. at 1.)

In her Reply brief, Walsh does point to "highlights" in the medical record that she says prove her continuing disability: "the Attending Physician Statements of Drs. Chang and Gruft; medical records establishing Plaintiff's neurosurgeon, Dr. Nockels' post-surgical restrictions of Walsh's activity . . .; and plaintiff's best observed functional performance at Marionjoy discharge . . . ."  (Pl.'s Reply at 4) (citations to the record and other specifics omitted).  However, Walsh does not analyze this evidence in light of the Plan language or otherwise explain how this evidence proves she is eligible for LTD benefits according to the terms of the Plan (*i.e.* that

Walsh is "unable to perform the duties of any gainful occupation for which [she] [is] reasonably fitted by education, training or experience").

Walsh focuses her arguments in support of her motion for summary judgment on the actions of Defendants. Walsh contends that she is entitled to continued LTD benefits because (1) Defendants' February 24, 2005 termination of Walsh's LTD benefits was "unfair," as Dr. Foye had a pecuniary interest in the denial of Walsh's LTD claim; (2) Prudential's denial letters "failed to meet the ERISA requirements mandating specific reasons for denial;" and (3) Defendants denied Walsh a "full and fair review" of her benefits claim by ignoring relevant medical evidence, mischaracterizing the physical requirements of Walsh's "regular occupation," unfairly administering a functional capacity evaluation and tainting the independent review process, and failing to identify "by specific job title what jobs allowed [sedentary-light duty work] before terminating plaintiff's LTD benefits and denying her appeals." (Pl.'s Mem. at 13-15.) Walsh argues that, by these acts, Defendants engaged in "flagrant disregard for several procedural safeguards required by ERISA regulatory sections discussed in *Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 688-690 (7th Cir. 1992)*." (Pl.'s Reply at 1-2.). Walsh cites 29 C.F.R. §§ 2560.503-1(g)(1)(i)-(iii) and 29 C.F.R. § 2560.503-1(h)(3)(ii) as examples of regulations that she argues were violated by Defendants' handling of her claim. (Pl.'s Reply at 6-11.)[4]

---

[4] 29 C.F.R. § 2560.503-1(g)(1)(i)-(iii) states:
(1) Except as provided in paragraph (g)(2) of this section, the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. . . . The notification shall set forth, in a manner calculated to be understood by the claimant—
      (I) The specific reason or reasons for the adverse determination;
      (ii) Reference to the specific plan provisions on which the

In *Halpin*, the Seventh Circuit did not apply a *de novo* standard of review to plaintiff Halpin's claim that he was eligible for continued total disability benefits under the terms of his LTD benefits plan. Rather, the court reviewed the plan administrator's decision to terminate Halpin's LTD benefits under a more deferential standard of review. *See Halpin*, 962 F.2d at 688 n.2 (declining to determine whether the correct standard of review was "arbitrary and capricious" or "abuse of discretion"). The court recognized "ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for 'full and fair review' by the administrator." *Id.* at 688-89 (citing 29 U.S.C. § 1133). These requirements, and their corresponding regulations, enable a participant to understand the inadequacies of his claim and "to prepare adequately 'for any further administrative review, as well as appeal to the federal courts.'" *Id.* at 689 (quoting *Matuszak v. Torrington Co.*, 927 F.2d 320, 323 (7th Cir. 1991)). Where a significant procedural error has occurred, "'fairness requires that [the

---

determination is based;
(iii) A description of any additional material or information
necessary for the claimant to perfect the claim and an explanation
of why such material or information is necessary.

29 C.F.R. § 2560.503-1(h)(3)(ii) states:
(3) Group health plans. The claims procedures of a group health plan will not be
deemed to provide a claimant with a reasonable opportunity for a full and fair
review of a claim and adverse benefit determination unless, in addition to
complying with the requirements of paragraphs (h)(2)(ii) through (iv) of this
section, the claims procedures—
* * *
(ii) Provide for a review that does not afford deference to the initial
adverse benefit determination and that is conducted by an
appropriate named fiduciary of the plan who is neither the
individual who made the adverse benefit determination that is the
subject of the appeal, nor the subordinate of such individual . . .

administrator's] decision be set aside.'" *Id.* at 690 (quoting *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 393 (7th Cir. 1983)).  In assessing whether a plan administrator has "substantially complied" with ERISA regulations, the focus of the court's analysis is on "the purpose of the regulations: to afford the beneficiary and the courts a sufficiently precise understanding of the ground for the denial to permit a realistic possibility of review, even under a deferential standard." *Id.* at 694.  Ultimately, the court found that the procedural errors in the *Halpin* case were significant enough to hinder the effective review of the plan administrator's original decision to terminate benefits.  *Id.* at 694; *see also id.* at 697 ("We merely emphasize again that Grainger's failure to set out its reasoning makes any such review impossible.")  In light of these errors, the Seventh Circuit affirmed the district court's decision to reinstate the plan participant's benefits, while leaving open the possibility that the employer might initiate further review of plaintiff's continuing eligibility for benefits in the future.

Both before and after *Halpin*, courts applying the arbitrary and capricious standard of review have found that the appropriate remedy for violations of ERISA procedures is either remand, *see, e.g., Wolfe*, 710 F.2d at 393, or reinstatement of benefits, *see, e.g., Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 777 (7th Cir. 2003), depending on the *status quo* before the plan administrator's decision was made.  *Hackett*, 315 F.3d at 775-76 (citing *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472 (7th Cir. 1998)).  In reaching this conclusion, courts have emphasized the fact that botched procedures limit the court's ability to review the plan administrator's decision.  *Hackett*, 315 F.3d at 775 ("Conclusions without explanation do not provide the requisite reasoning and do not allow for effective review.") (citing *Halpin*, 962 F.2d at 693).  Courts have also emphasized the importance of not substituting

the court's judgment for that of the plan administrator on the ultimate question of benefits entitlement.  *Id.* at 776 (citing *Quinn*, 161 F.3d at 478).

*De novo* review is different.  Under *de novo* review, the court's primary duty is to determine the plaintiff's eligibility for benefits.  "That means that the question before the district court was not whether [the plan administrator] gave [claimant] a full and fair hearing or undertook a selective review of the evidence; rather, it was the ultimate question of whether [claimant] was entitled to the benefits he sought under the plan."  *Diaz II*, 499 F.3d at 643.  As the Seventh Circuit has explained, "[w]hat happened before the Plan administrator or ERISA fiduciary is irrelevant."  *Id.*  It is clear to this court that any procedural violations that may have occurred in denying Walsh's LTD claim are also irrelevant.  *Accord Beyer v. Liberty Life Assurance Co. of Boston*, No. 04-C-0608, 2008 WL 163678, at *11 (E.D. Wis. Jan 15, 2008) ("a procedural violation does not lead to the conclusion that the [plan administrator's] decision was incorrect and it does not entitle [the claimant] to the current and future benefits she seeks").  In reaching this conclusion, the court focuses on the purpose of ERISA's procedural regulations: "to afford the beneficiary and the courts a sufficiently precise understanding of the ground for the denial *to permit a realistic possibility of review*."  *Halpin*, 962 F.2d at 694 (emphasis added).  Under a *de novo* standard of review, however, "the district courts are not *reviewing* anything; they are making an independent decision about the employee's entitlement to benefits."  *Diaz II*, 499 F.3d at 643 (emphasis in original).  In effect, the plan administrator's decision has already been set aside under these circumstances, and the plan participant is provided with a fresh opportunity to prove that she is entitled to benefits pursuant to the terms of the plan.  *See*

14

*Matuszak*, 927 F.2d at 323 (applying *de novo* standard of review as a remedy for violations of 29 U.S.C. § 1133). Because the remedy for any procedural violations has already been granted when a court applies the *de novo* standard of review (*i.e.* setting aside the plan administrator's decision), this court can discern no reason to inquire further into Defendants' compliance with ERISA's procedural regulations in relation to Walsh's LTD claim.

Walsh has directed the court to no case law supporting her assertion that, under a *de novo* standard of review, she is entitled to the reinstatement of benefits because she was denied a full and fair review of her claims. (Pl.'s Reply at 11) (contending without citation that *Halpin* is "equally suitable for *de novo* review application"). The court through its own research has not found any such cases. Therefore, for the reasons set forth above, the court concludes as a matter of law that *de novo* review does not provide a separate and distinct remedy for violations of ERISA procedure.

The ultimate question before the court is whether Walsh is entitled to LTD benefits under the terms of the Plan. As the moving party on summary judgment, Walsh "bears the burden of proving that there is no genuine issue of material fact and that [she] is entitled to judgment as a matter of law." *Hicks v. Midwest Transit, Inc.*, 500 F.3d 647, 651 (7th Cir. 2007). In a nutshell, this means that Walsh must "provide[ ] evidence that she has an impairment that affects her ability to work" in accordance with the terms of the Plan. *Tate*, 545 F.3d at 562; *see also Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 179 (7th Cir. 1994) ("*Tolle II*") ("To recover benefits under § 502(a)(1)(B), the employee must establish that he or she 'has satisfied the conditions necessary for benefits under the plan.'") (quoting *Tolle v. Carroll Touch, Inc*, 977 F.2d 1129, 1133 (7th Cir. 1992) ("*Tolle I*")). Walsh does not dispute that she received 24 months of LTD payments before

these benefits were terminated by Prudential. Therefore, according to the terms of the Plan, Walsh could only continue receiving LTD benefits if she was "unable to perform the duties of any gainful occupation for which [she] [was] reasonably fitted by education, training or experience." (Def.'s 56.1(a)(3) Stmt. ¶ 8 (citing Admin. Record at PRU000761).)

Walsh first attempts to meet this burden by directing the court to the Administrative Record and Supplemental Record in their entirety. (Pl.'s Mem. at 1; Pl.'s Reply at 3.) The court declines this implied invitation to review hundreds of pages of medical records and other documentary evidence without the assistance of counsel in a generalized attempt to determine if any of the evidence contained therein could support Walsh's position. Local Rule 56.1(a)(3) requires movants for summary judgment to identify the specific facts within the record that support their alleged right to judgment as a matter of law. "The purpose of Local Rule 56.1 is to isolate legitimately disputed facts and assist the court in its summary judgment determination." *Brown v. GES Exposition Servs., Inc.,* 03 C 3921, 2006 WL 861174, at *1 (N.D. Ill. Mar. 31, 2006). To that end, Local Rule 56.1 requires the parties to distill the evidence into its essential components through "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 527 (7th Cir. 2000). General citations to the evidentiary record in its entirety do not comport with Local Rule 56.1(a)(3) and do not assist the court in reaching a decision on summary judgment.

Walsh does cite some specific evidence in her Reply brief. For the most part these citations come too late, as Defendants had no opportunity to respond to Walsh's arguments based on these facts. Moreover, Walsh may not rely on facts that were not set forth in her 56.1(a)(3)

Statement of Undisputed Material Facts.[5]  Walsh's general reference to "the Attending Physician Statements of Drs. Change and Gruft (Admin. Rec. PRU000563-565 and PRU000212-218)" (Pl.'s Reply at 4) falls into this category—pages 212-218 of the Administrative Record were not cited anywhere in Walsh's 56.1(a)(3) Statement of Undisputed Material Facts, and pages 563-565 were cited only for the proposition that "Walsh sent completed claim forms to Prudential for LTD benefits because of her continued disability from sitting and walking after the July 22, 2002 lower back surgery performed by Dr. Chang."  (Pl.'s 56.1(a)(3) Stmt. ¶ 54.)  Walsh did not initially set forth these records as evidence that Walsh qualified for continuing LTD benefits in February 2005, and she cannot now rely on them for this purpose.  The court also notes that Walsh has in no way explained why these records from 2003 and 2004 should be considered relevant evidence of Walsh's disability in 2005, or how these records demonstrate her inability to perform the duties of any gainful occupation.

Next, Walsh refers to "medical records establishing Plaintiff's neurosurgeon, Dr. Nockels' post-surgical restrictions of Walsh's activity to prohibit bending, twisting, lifting more than five pounds of weight, required lifting only from a squatting position, to avoid extreme bending activities of the lumbar spine and no sitting at ninety degrees for greater than thirty minutes three times per day (Admin. Rec. PRU000459, 399)."  (Pl.'s Reply at 4.)  Page 399 of the Administrative Record was referenced in Walsh's 56.1(a)(3) Statement of Undisputed Material

_____

[5] Citations within a party's brief should be to the 56.1(a) or (b) statement only.  *Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000).  Despite Walsh's failure to cite her own 56.1(a)(3) Statement of Undisputed Material Facts in this manner, the court has independently compared Walsh's citations to the Administrative Record in her Reply brief with her 56.1(a)(3) Statement of Undisputed Material Facts in an attempt to discern whether Walsh gave Defendants notice of her intent to rely on certain evidence for summary judgment purposes.

Facts (¶¶ 27, 31, 32), but does not appear to be evidence of Dr. Nockels' post-surgical restrictions—rather, it is an initial evaluation performed by Dr. Muppavarapu on July 24, 2003. Page 459 does contain Dr. Nockels' post-surgical restrictions, was initially referenced by Walsh in her statement of facts, and was admitted by Defendants as true. (*See* Def.'s 56.1(b)(3)(B) Resp. ¶ 27.) However, Defendants deny that Dr. Nockels' restrictions on June 19, 2003 constitute evidence of Walsh's inability to perform "any gainful occupation" in early 2005. (*Id.*) The court agrees. Walsh argues that Dr. Nockels' restrictions "should be viewed by the District Court as continuing indefinitely until later lifted or modified, which has yet to occur," (Pl.'s Reply at 4), but this argument defies common sense. Dr. Nockels' statements are contained in a "Discharge Summary," which notes that "Patient was discharged home in stable condition on June 19, 2003 with the following instructions . . . .," and the second page of Dr. Nockels' Discharge Summary includes a notation indicating that Walsh was to follow-up with Dr. Nockels in "approximately two weeks." (Admin. Record at PRU000459-PRU000460.) Restrictions on activity following a serious medical procedure are generally designed to address the fragile condition of a patient's recovering bones, muscles, and other tissues. Presumably, Dr. Nockels planned to reassess the limitations assigned to Walsh once he had a chance to evaluate her first two weeks of recovery. Without more, the court cannot reasonably infer that these restrictions were still in place 20 months later, at which point Walsh had received care and treatment from numerous other physicians. Finally, the court notes that Walsh again fails to explain how Dr. Nockels' restrictions—even if they did remain in effect—impacted Walsh's ability to perform "any gainful occupation" in accordance with the terms of the Plan.

Last, Walsh cites to a record of her "best observed functional performance at Marionjoy

discharge" on August 21, 2003, as recorded by Dr. Gruft. (Pl.'s Reply at 4 (citing Admin. Record at PRU000405.)) Defendants dispute Walsh's characterization the restrictions noted in this document. (Def.'s 56.1(b)(3)(B) Resp. ¶ 34.) However, the court's main concern with this evidence, on *de novo* review, is that it does not speak to Walsh's abilities in early 2005. Between the time of Dr. Gruft's statements—which contain numerous observations of Walsh's improvements in different areas—and the time that the Plan's "any gainful occupation" definition of disability went into effect, Walsh continued to be treated by Dr. Gruft for over a year. This included a full year of outpatient physical therapy at Marionjoy on Dr. Gruft's recommendation. Presumably, these treatments would have had a beneficial effect on Walsh's ability to tolerate pain and engage in physical activity. Moreover, Dr. Gruft specifically noted Walsh's concern that "she will not be able to go back to the same job as it requires her to sit for more than two and a half hours at a time" and stated that concern "will be addressed later on." (Admin. Record at PRU000405.) This suggests that Dr. Gruft expected further improvements in Walsh's physical condition. Additionally, because Walsh has not specified how her physical limitations impact her ability to perform "any gainful occupation," the court is left to speculate whether Walsh could have met this requirement even assuming that Dr. Gruft's description of her abilities remained accurate through 2005.

Ultimately, the court finds that the undisputed facts cited by Walsh are insufficient to support her claim for benefits under the terms of the Plan. Walsh has provided no evidence of her physical abilities in 2004 or early 2005, and does not explain how her physical limitations made her "unable to perform the duties of any gainful occupation for which [she] [was] reasonably fitted by education, training or experience." On this bare record, the court cannot

find that summary judgment is warranted in favor of Walsh.  Walsh's motion for summary judgment is therefore denied.


2.      Defendant's Motion for Summary Judgment

As noted above, the moving party on summary judgment "bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law."  *Hicks*, 500 F.3d at 651.  "However, when confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial."  *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988).  To put it somewhat less delicately,    summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'"  *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)).  Again, Walsh ultimately bears the burden of proving that she is entitled to LTD benefits under the terms of the Plan.  *Ruttenberg*, 413 F.3d at 663; *Tolle II*, 23 F.3d at 179.

Defendants argue "it is clear that Plaintiff's medical condition did not prevent her from performing the duties of **any** gainful occupation for which she is reasonably fitted by education, training or experience."  (Def.'s Mem. at 7) (emphasis in original).  In support of this argument, Defendants point to various medical evidence in the record, including: (1) Dr. Foye's February 20, 2005 conclusion that "since the June 13, 2003 lumbar surgery, the lumbar MRI studies (11-7-03 and 11-8-04) failed to show any evidence of recurrent/residual disc herniation or spinal cord

20

impingement and the most recent EMG studies showed some improvement of the radiculopathy, including signs of reinnervation" (quotation taken from Def.'s 56.1(a)(3) Stmt. ¶ 23, cited in Def.'s Mem. at 8); (2) Dr. Gruft's March 11, 2005 acknowledgment that there was no objective evidence for Walsh's radiculopathy (Def.'s Mem at 8 (citing Def.'s 56.1(a)(3) Stmt. ¶ 34));[6] (3) Dr. Rosania's conclusions after performing an Independent Medical Examination on March 5, 2004 that Walsh was able to perform occupational tasks with certain restrictions, was able to perform her occupation, and was not totally medically impaired (*Id.* (citing Def.'s 56.1(a)(3) Stmt. ¶ 22)); (4) Dr. Bauer's April 11, 2006 conclusion after performing an independent file review that Walsh had sufficient function to be able to work at least at a sedentary-light level work (*Id.* (citing Def.'s 56.1(a)(3) Stmt. ¶ 52)); (5) Dr. Brander's conclusion after performing an Independent Medical Examination on July 18, 2008 that Walsh's musculoskeletal disability is minor and does not preclude her working at a sedentary job (*Id.* at 9 (citing Def.'s 56.1(a)(3) Stmt. ¶ 63-65)); and (6) Gregg Schwartzkopf's conclusion on September 26, 2005 after conducting a transferable skills analysis that there were several occupations Walsh could perform with her restrictions (*Id.* at 11 (citing Def.'s 56.1(a)(3) Stmt. ¶¶ 53-55)).

Walsh does not dispute that each of these opinions was set forth by the professionals referenced by Defendants.  (*See* Pl.'s 56.1(b)(3)(B) Resp. ¶¶ 22-23, 34, 52, 55, 65.)  However, Walsh does argue that some of this evidence is unreliable.

First, Walsh argues that Dr. Rosania's and Dr. Foye's opinions fail to take into account

---

[6] In full, Dr. Gruft's statement is not quite so straightforward.  Dr. Gruft opines that, "Although the medical records indicate that there is no objective evidence for the patient's radiculopathy, there in fact is objective evidence for L5 chronic radiculopathy in the EMG done both 8/03 and 12/03."  (Admin. Record at PRU000062.)

that there was no light duty or modified duty available for Walsh's position at DeVry. To the extent this may be true,[7] the court is unpersuaded that this fact is material. The question before the court is whether Walsh could "perform the duties of any gainful occupation for which [she] [was] reasonably fitted by education, training or experience." Walsh has not argued that she was physically incapable of performing in a light duty, modified duty, or sedentary capacity, nor has she argued that such an occupation was an unreasonable fit for her education, training, or experience. Whether any such positions were available at DeVry is irrelevant, as Walsh's entitlement to continued LTD benefits is not contingent on her ability to perform her job at DeVry.

Walsh also argues that Dr. Rosania's and Dr. Foye's opinions are unreliable and invalid because they did not "identif[y] ay particular job or occupation in their written reports that served as objective criteria on which their light duty and modified duty opinion had been based." (Pl.'s Resp. at 3.) The section of Dr. Foye's opinion relied upon by Defendants does not opine that Walsh is qualified for light duty or modified duty employment; rather, Dr. Foye discusses medical evidence of recurrent/residual disc herniation, spinal cord impingement, and radiculopathy. Walsh's argument on this point is therefore inapposite. Likewise, Dr. Rosania

---

[7] Walsh cites numerous additional facts in her responsive brief that she argues require the denial of summary judgment. However, Walsh has failed to set forth a separate statement of these additional facts in accordance with Local Rule 56.1(b)(3)(C), instead citing directly to the Administrative Record or to exhibits attached to her responsive brief. To provide Walsh as full an opportunity as possible in her opposition to Defendants' motion for summary judgment, the court will consider these facts to be relevant. The court notes that it has discretion to strictly enforce the requirements of the Local Rules on summary judgment, should it choose to do so. *See Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004). In this case, the parties dispute whether Exhibit A to Walsh's responsive brief demonstrates that Walsh's position at DeVry should be considered "light" and whether "light duty" modifications were available for Walsh's position at DeVry.

opined only that Walsh could perform various occupational tasks with certain restrictions, could perform *her* occupation, and "should not be considered totally medically impaired at this time." (Def.'s 56.1(a)(3) Stmt. ¶ 22 (quoting PRU000331).)  Again, Walsh's argument misses the mark because Dr. Rosania did not opine that Walsh could perform light duty or modified duty employment in general.

Walsh also argues that the opinions of Dr. Rosania, Dr. Foye, Dr. Bauer, and Gregg Schwartzkopf were invalid because they failed to consider Dr. Nockels' post-surgery limitations on Walsh's physical activities.  As explained in the court's analysis of Walsh's motion for summary judgment set forth earlier in this opinion, the court is unpersuaded that Dr. Nockels' limitations remained in effect beyond Walsh's immediate convalescence in 2003.  Walsh's only argument that the reviewing professionals should have taken these restrictions into account is that "Dr. Nockles['] discharge summary dictation listing these restrictions in plaintiff's chart did not include any time limit at all and should be viewed as continuing indefinitely until later lifted or modified."  (Pl.'s Resp. at 3.)  This is not enough to convince the court that the post-surgical limitations put in place by Dr. Nockels upon plaintiff's discharge from the hospital on June 19, 2003 remained pertinent to the question of whether Walsh was able to engage in gainful employment in 2004, 2005 or 2006, after the other professionals reviewing Walsh's condition issued their opinions.

Finally, Walsh argues that Dr. Foye's opinion should be disregarded because he was biased.  As proof of this bias, Walsh directs the court to Dr. Foye's pecuniary interest in maintaining an ongoing relationship with Prudential as a medical consultant; Dr. Foye's "gross misrepresentations" of Dr. Anderson's report; and the fact that Dr. Foye's initial opinion that

Walsh did not qualify for LTD benefits was reversed by Dr. Kowalski. (Pl.'s Resp. at 4-5.) The court recognizes, as has the Seventh Circuit, "that expert witnesses are often paid very handsome fees, and common sense suggests that a financial stake can influence an expert's testimony." *Austin v. Am. Ass'n of Neurological Surgeons*, 253 F.3d 967, 973 (7th Cir. 2001). On the other hand, "plan administrators have a duty to all plan participants and beneficiaries to investigate claims and make sure to avoid paying benefits to claimants who are not entitled to receive them." *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 575 (7th Cir. 2006). The court will consider Dr. Foye's financial relationship with Prudential (he was paid over $137,000 by Prudential in 2005 alone) a factor in evaluating the reliability of Dr. Foye's report. However, the court declines to find Dr. Foye's report unreliable after considering all of the relevant circumstances. To the extent Walsh argues that Dr. Foye "created a gross misrepresentations of Dr. Gunnar Andersson's November 11, 2003 written report," (Pl.'s Resp. at 4), the court disagrees. Dr. Foye's quotation of Dr. Anderson's statement was not misleading or improper, and the meaning of the quoted phrases does not change when placed within their original context. Also, the fact that Prudential rejected Dr. Foye's 2003 conclusion does not mean that Dr. Foye's 2005 conclusion was necessarily unreliable. Both Dr. Foye and Prudential reviewed different evidence in arriving at their conclusions in 2003 and 2005, respectively, and these conclusions were based on different Plan provisions. While Dr. Foye's opinion may have been in the minority in 2003, that does not mean he was unqualified to issue a reliable opinion in 2005. Because Dr. Foye's financial interest in maintaining an ongoing relationship with Prudential stands alone as the only reason to doubt Dr. Foye's 2005 conclusion, and Walsh has shown no other objective evidence of bias, the court rejects Walsh's argument that Dr. Foye's report is

unreliable as a whole.

Ultimately, it is Walsh's burden to demonstrate that she is entitled to benefits under the terms of the Plan. *Ruttenberg*, 413 F.3d at 663; *Tolle II*, 23 F.3d at 179. Besides attacking the strength of Defendants' evidence, Walsh has failed to "show what evidence [she] has that would convince a trier of fact to accept [her] version of events." *Johnson*, 325 F.3d at 901. As discussed above, summary judgment is the "put up or shut up" moment in a lawsuit. *Id.* If Walsh cannot supply evidence that she is entitled to LTD benefits under the terms of the Plan, summary judgment must be granted in favor of Defendants.

Without any citation, Walsh directs the court to "plaintiff's treatment records from South Suburban Hospital, UIC Pain Service, Loyola University Medical Center, Marionjoy, Dr. Goodman, Dr. Lipov and her continuing treatment records from care by Dr. James Gruft" as evidence that she submitted proof of continued, total disability to Prudential in accordance with the Plan's proof of claim requirements. (Pl.'s Resp. at 5.) Walsh also directs the court to "the supplemental record, especially Dr. Gruft's deposition and opinion letter attachments (Supp. Rec. 18-105)" as proof of her continued and total disability since March 1, 2005. (Pl.'s Resp. at 5.) As discussed above, the court declines, as it is entitled, to engage in this type of uninformed document review. *See Albrechtsen v. Bd. of Regents of Univ. of Wis. System*, 309 F.3d 433, 436 (7th Cir. 2002) ("Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material. 'Judges are not like pigs, hunting for truffles buried in' the record.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Walsh does not direct the court to any specific evidence suggesting that she

was unable to perform "the duties of any gainful occupation for which [she] [was] reasonably fitted by education, training or experience" in 2005 or anytime thereafter. With essentially no evidence before the court that Walsh qualified for continuing LTD benefits under the terms of the Plan, the court has no other legal choice but to grant Defendants' motion for summary judgment.

3.      Defendants' Counterclaim

Prudential filed a counterclaim in this lawsuit for breach of contract, alleging that Walsh owes Prudential $31,629.60 for the overpayment of benefits in relation to her Social Security Disability Benefits, and that she failed to reimburse Prudential this amount as required by the Plan and a Reimbursement Agreement signed by Walsh on March 4, 2003. Walsh does not dispute that she owes this amount or that she is liable to Prudential under the terms of the relevant contracts. (Pl.'s Resp. at 6.) Rather, she argues that Prudential agreed to "stay any reimbursement collection activity directed toward plaintiff until the conclusion of this action" in exchange for Walsh's dismissal of her ERISA § 1132(a)(3) claim seeking an injunction of reimbursement collection activities. (*Id.*) Accepting this as true—again, Walsh improperly relies on evidence attached as an exhibit to her Response—it does not mean that Prudential cannot seek a judgment on its counterclaim. Judgement and collection activities are two different things, and there is no reason to believe that Prudential cannot attempt to secure a judgment in its favor on its counterclaim *while* refraining from engaging in any collection activities at this time. Judgment is therefore granted in favor of Prudential on its counterclaim.

4.      Attorney's Fees

Finally, because Walsh has not prevailed on her ERISA claim, this court finds that she is

not entitled to attorney's fees or costs.  *Quinn*, 161 F.3d at 478.

CONCLUSION

For reasons set forth above, plaintiff Kimberly A. Walsh's Motion for Summary Judgment (Dkt. No. 89-4) is denied in its entirety and Defendants' Motion for Summary Judgment (Dkt. No. 82) is granted in its entirety.  Judgment is entered in favor of Defendants' on all claims and on Defendants' counterclaim.  All outstanding claims having been thus resolved, this lawsuit is hereby terminated.

ENTER:


James F. Holderman
_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 9, 2009